# Commonwealth of Pennsylvania, Appellant, *v.* Union Traction Company of Philadelphia.

*Taxation—Tax on corporate loans—Lease—Stock trust certificates.*

Three street railway companies contemplating a lease of their lines to a fourth company had their stockholders deposit their stock with a trustee who issued to the stockholders stock trust certificates. Subsequently the leases were executed, under which the lessor company agreed to pay as rental a net sum equal to a certain per cent upon the amount of the stock trust certificates. These rentals were paid over to the lessee companies, and by them paid over to the trustee, who in turn paid them out in the form of interest upon the stock trust certificates. *Held,* that the lessor company was not liable to pay a tax to the commonwealth upon the stock trust certificates as a corporate loan under the Act of June 30, 1885, P. L. 193.

*Taxation—Mortgage—Corporation.*

A corporation is not liable to the commonwealth for a tax on a mortgage issued by private parties upon property subsequently purchased by the corporation, where it appears that the corporation had not assumed the mortgage as its own indebtedness.

Submitted June 10, 1899, without oral argument. Appeal, No. 14, May T., 1899, by plaintiff, from judgment of C. P. Dauphin Co., Commonwealth Docket, 1897, No. 294, on appeal from tax settlement. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.

Appeal from tax settlement.

The facts appear by the opinion of SIMONTON, P. J., which was as follows:

This case having been heard without a jury, by agreement of the parties, under the act of April 22, 1874, we find from the evidence the following facts:

1. In the year 1895 the Philadelphia Traction Company, Electric Traction Company and People's Traction Company were each operating extensive systems of street railway in the city of Philadelphia. The stockholders of these three corporations came to a mutual understanding whereby it was agreed that, in proportion to their holdings in the shares of the three companies above named, they should each subscribe to the capital stock of a new company to be incorporated and to be

called the Union Traction Company, which new company was to take over and operate the street railway systems of all three of the old companies, guaranteeing or assuring to the stockholders in the old companies dividends of four per cent, on the following valuations, viz: Philadelphia Traction Company, $100 per share for shares upon which $50.00 each had been paid in; People's Traction Company, $76.00 per share upon shares of $50.00 each; Electric Traction Company, $85.00 per share for shares upon which $70.00 had been paid, and $70.00 for shares upon which $30.00 had been paid in.

In pursuance of this agreement or understanding the stockholders of the three old companies became the corporators of the Union Traction Company, defendant, which was incorporated on September 6, 1895, under the provisions of the general act of March 22, 1887, for the creation of traction motor companies.

2. Immediately upon its incorporation the Union Traction Company took over by lease the system of the Philadelphia Traction Company, agreeing in said lease to pay a net rental equal to dividends of four per cent upon the agreed valuation of its capital stock. But there being at the time some difficulty in the way of leasing the whole or some parts of the systems operated by the Electric Traction Company and People's Traction Company, an arrangement was made whereby the shareholders in those companies deposited their shares with the Pennsylvania Company for Insurance on Lives and Granting Annuities, acting as trustee. The said trustee issued to the depositors of said shares what are known as "Electric and People's Traction Stock Trust Certificates." The amount of such certificate issued in each case was for the number of shares deposited at the valuation stated in finding of facts No. 1; that is to say, for each share of stock of the People's Traction Company deposited the depositor received a certificate for $76.00; for each share of Electric Traction Company stock, $50.00 paid, he received a certificate for $85.00; for each share upon which $30.00 had been paid he received a certificate for $70.00, the certificate entitling the holder to receive what is thereon designated as "interest thereon at the rate of four per cent," and each of said certificates being in the form following, viz:

" No.  ....                                    $. ........

## " ELECTRIC AND PEOPLE'S TRACTION STOCK TRUST. CERTIFICATE.

" Issued by the Pennsylvania Company for Insurances on Lives and Granting Annuities.

" Secured by deposit of shares of the capital stock of the Electric Traction Company and the People's Traction Company of Philadelphia, and by contract of the Union Traction Company of Philadelphia.

" The Pennsylvania Company for Insurances on.Lives and Granting Annuities, as trustee under and upon the terms of certain articles of agreement between itself and the Union Traction Company of Philadelphia of even date herewith, duly recorded in the office of the recorder of deeds for the city and county of Philadelphia, deposited with the trustee, by virtue of which it is the holder of certain shares of the capital stock of the Electric Traction Company and the People's Traction Company of Philadelphia,. hereby certifies that the registered holder thereof, for value received, is entitled to the sum of ........... dollars, lawful gold coin of the United States of America of present standard weight and fineness, with interest thereon at the rate of four per cent. per annum, payable in like gold coin at the office of the trustee in the city of Philadelphia, semi-annually, on the first days of April and October in each year to the registered holder thereof, or his legal representative, the principal of this certificate to be redeemable at the option of the Union Traction Company on October 1, 1945, or at any semi-annual interest period thereafter, that payment of which said principal and interest is secured by the deposit of said shares of the capital stock of the Electric Traction Company and the People's Traction Company of Philadelphia with said trustee in accordance with the terms of the articles of agreement aforesaid, as by reference thereto will more fully appear, said .agreement also containing an obligation on the part of the Union Traction Company of Philadelphia guaranteeing the payment of the principal and interest at maturity of this and like certificates issued hereunder.

" Said agreement also vesting said trustee with power, in event of default in the payment of said principal and interest

upon the terms and conditions in said agreement fully expressed to sell the said shares of the said Electric Traction Company and the People's Traction Company of Philadelphia deposited as aforesaid for the benefit of the holders hereof. These certificates may be transferred and registered by the owner in person, or by his attorney duly authorized, upon the register kept for that purpose at the office of said trustee at Philadelphia, and a certificate of every such transfer and registration shall be indorsed hereon, and upon such transfer and registration, the registered owner only, or the legal representative of such registered owner, shall be entitled to receive principal and interest of this certificate.

" This certificate is one of a series of certificates numbered from one upwards, the aggregate amount of which outstanding at any one time by the terms of said articles of agreement is limited to thirty millions of dollars ; and said certificates are to be certified by the trustee and issued only upon the deposit with the trustee of shares of the Electric Traction Company and People's Traction Company of Philadelphia, for the purchase of which these certificates were issued, at the rate of eighty-five dollars per share for each share of Electric Traction stock on which fifty dollars has been paid, and at the rate of seventy-six dollars per share for each share of People's Traction stock so deposited and held by the trustee hereunder, all of said certificates to be of like date, amount, tenor and effect without priority, preference, or distinction whatsoever of one over another; and the principal and interest therein named are payable without deduction for any tax or taxes now imposed or hereafter to be imposed thereon, either by the laws of the United States of America or of the State of Pennsylvania, for national, state, or municipal purposes, and which either or any of said companies is or may be required or authorized to retain therefrom, the said Union Traction Company of Philadelphia agreeing to pay or cause the same to be paid.

" In testimony whereof, the Pennsylvania Company for Insurances on Lives and Granting Annuities has caused its corporate seal to be hereunto affixed, duly attested, the first day of October, A. D. 1895.

"It is hereby attested that the obligations recited in this certificate as having been entered into by the Union Traction Com-

pany of Philadelphia in the agreement therein referred to are correctly stated.

" In testimony whereof, by authority of the board of directors, the corporate seal of the Union Traction Company of Philadelphia has been hereto duly affixed and attested.

The total amount of these certificates issued just equals the number of shares of stock deposited at the valuations above stated.

3. The shares of the Electric Traction Company and of the People's Traction Company having, by their deposit with the trustee, been withdrawn from the market, the Electric and People's Traction stock trust certificates, issued in lieu of said shares, took their place in the market, and sell for whatever it is considered to be the value of the shares deposited and in lieu of which they were issued.

4. Shortly after the creation of the trust and the issuance of the Electric and People's Traction stock trust certificates, the legal objections to the leases having been overcome, formal leases were made of the respective properties or systems of the Electric Traction Company and People's Traction Company to the Union Traction Company wherein the Union Traction Company agrees to pay, and it does pay, as rental, a net sum equal to four per cent upon the shares at the valuations above stated, and equal to four per cent upon the amount of the stock trust certificates. These rentals are paid by the Union Traction Company to the Electric Traction Company and People's Traction Company, and are by said companies paid over to the trustee, and by the trustee are paid out in the form of interest upon the said stock trust certificates.

5. For the tax year 1896 the Electric Traction Company made report to the auditor general of all the shares of its capital stock, being the shares deposited with the trustee and based upon which stock trust certificates had been issued, and it appraised the said shares at $10,320,517.40, stating upon the face of its report that their appraisement was " based on sales of Electric and People's Traction four per cent stock trust certificates into which the stock of this company was converted at $85.00 for full paid stock and $70.00 for $30.00 paid stock in November, 1895," and also stating in said report that " the price at which the shares are valued as above is based on the price of

seventy-one per cent for the stock trust certificates which represent the shares, as explained above, that being the average price at which said certificates sold between November 1 and 15, 1896, which was higher than the yearly average."

For the same tax year the People's Traction Company also made return and appraisement of its capital stock, expressly stating on the face thereof that the quotations and valuations thereof were "based on sales of Electric and People's Traction four per cent stock trust certificates into which the stock was converted at $76.00 per share in November, 1895," the total valuation of the capital stock of the People's Traction Company amounting to $10,793,000.

These two valuations just equal in amount the total outstanding Electric and People's Traction stock trust certificates at a valuation of seventy-one cents on the dollar, that being the average selling price of said certificates between November 1 and 15, 1896, the period fixed by law for making the appraisement. These valuations were accepted by the auditor general, who, after making certain deductions on account of shares in other companies which had already been taxed, assessed upon the full amount of each said valuation the capital stock tax of five mills imposed by the act of 1891, and the taxes so charged were paid in full by the Union Traction Company, defendant.

6. For the year 1896, being called upon by the auditor general so to do, defendant's treasurer made to the auditor general a report of the outstanding amount of Electric and People's Traction stock trust certificates, showing the same to have been $29,724,876. The company, however, protested against its liability to report or pay any further tax in respect of said stock trust certificates, claiming that they were not issued by it and did not represent its indebtedness.

7. During the year 1896, $25,236,261 of Electric and People's Traction stock trust certificates were held by individual residents of Pennsylvania; $745,467 by individual residents as trustees, agents, attorneys in fact or in other fiduciary capacity; $348,298 by Pennsylvania corporations, as trustees, agents, attorneys in fact or in some fiduciary capacity, and $68,000 by Pennsylvania state banks and savings institutions. Upon these amounts, aggregating $26,398,026, and also upon a mortgage of $15,000, making a total of $26,413,026, the auditor general

charged tax against defendant at the rate of four mills under the 4th section of the act of June 10, 1885, and the 1st section of the act of June 8, 1891, treating the same as obligations of indebtedness of the defendant corporation under these statutes.

8. The mortgages amounting to $15,000, in respect of which tax is charged, as shown in the preceding finding of fact, were not issued by the defendant corporation, but were issued by private parties prior to the incorporation of defendant and constitute liens upon property subsequently purchased by defendant. In order to protect its own interest in the mortgaged property, defendant did, in 1896, pay the interest on the said mortgages, without deduction for state taxes, but it has never assumed as its own the indebtedness secured by said mortgages.

9. The defendant did not during the year 1896 itself pay to the holders of Electric and People's Traction stock trust certificates any interest thereon. It paid to the Electric Traction Company and People's Traction Company, respectively, as rentals for their properties, the amounts required by their respective leases, the net amount of such payments being just equal to four per cent upon the valuations of their shares hereinbefore found. Those companies paid the said amounts to the Pennsylvania Company for Insurance on Lives and Granting Annuities, as trustee, which was the holder of said shares, and that company paid out the said amounts in the form of interest upon the Electric and People's Traction stock trust certificates which had been issued to the persons depositing said shares.

10. The affidavits of John Lowber Welsh and Charles O. Kruger, Samuel S. Price, Winthrop Smith and George C. Thomas, being uncontradicted, they are referred to, and the contents thereof found as facts, with like effect as if herein recited and set forth at length.

### DISCUSSION.

The tax in controversy is that commonly known as the tax on loans. It is claimed by the commonwealth under the 4th section of the Act of June 30, 1885, P. L. 193, which is as follows, viz :

" That hereafter it shall be the duty of the treasurer of each private corporation incorporated by or under the laws of this commonwealth, or the laws of any other state or of the United

States, and doing business in this commonwealth, upon the payment of any interest on any scrip, bond or certificate of indebtedness issued by said corporations to residents of this commonwealth, and held by them, to assess the tax imposed and provided for state purposes upon the nominal value of each and every said evidence of debt, and to report on oath annually on the first Monday of November to the auditor general the amount of, indebtedness of the corporation owned by residents of this commonwealth, as nearly as the same can be ascertained, and it shall be his further duty to deduct three mills on every dollar of the interest paid as aforesaid, and return the same into the state treasury within fifteen days after the 31st of December in each year, and his compensation for his service shall be the same that city and borough treasurers receive for similar services ; and for every failure to assess and pay said tax and make report as aforesaid, the auditor general shall add ten per centum as a penalty to the amount of the tax; on payment of said tax by a corporation the bonds, certificates, or other evidences of indebtedness issued by it shall be exempt from all other taxation in the hands of the holders of the same."

This statute places corporate loans in a separate and distinct class, and makes the corporation responsible for the collection of the tax by deducting it from the interest paid by its treasurer upon scrip, bonds or certificates of indebtedness issued by the corporation : Com. v. Del. Div. Canal Co., 123 Pa. 594.

By the 1st section of the Act of June 8, 1891, P. L. 229, a tax of four mills is imposed upon " all mortgages, all moneys owing by solvent debtors, whether by promissory note or penal or single bill, bond or judgment," and also upon the shares of stock of all corporations with the exception, however, of " shares of stock in any corporation or limited partnership liable to the capital stock tax imposed by the 21st section of this act, or relieves from the payment of said tax by said section."

The 4th section of the act of 1885 and the 1st section of the act of 1891 are to be construed together so as to require the corporation to deduct four mills from the interest paid upon corporate indebtedness : Com. v. Wilkes-Barre and Scranton Ry. Co., 162 Pa. 614. We do not think, however, that the Electric and People's Traction stock trust certificates, so

called, can be found to constitute or represent an indebtedness on the part of the Union Traction Company and within the meaning and intendment of the statutory provisions cited.

The interest which was paid upon stock trust certificates and was in lieu and just the amount of the dividends which it had been agreed should be received by the holders of the shares deposited with the trustee, was not paid by the defendant as interest, but as rentals, or rather, the money with which said so-called interest was finally paid was derived from the rentals paid by the defendant.

Under all the circumstances of the case, we are unable to hold that the Electric and People's stock trust certificates represent the indebtedness of the defendant or that the defendant has paid interest in such a way as to make it subject to the provisions of the 4th section of the act of 1885.

The $15,000 of mortgages issued by private parties upon property subsequently purchased by defendant, not having been assumed by it as its own indebtedness, the case is within the ruling of Com. v. Hillside Coal and Iron Co., 49 Leg. Int. 385.

We therefore arrive at the following conclusions of law :

1. The commonwealth is not entitled to recover any tax from defendant in respect of Electric and People's Traction stock trust certificates.

2. The commonwealth is not entitled to recover from defendant any tax in respect of $15,000 of mortgages issued by private parties and secured upon property held by defendant.

Judgment is therefore directed to be entered in favor of defendant unless exceptions be filed according to law.

*Error assigned* was the judgment of the court.

*Frederick W. Fleitz,* deputy attorney general, and *John P. Elkin,* attorney general, for appellant.

*E. A. Ballard, M. E. Olmstead* and *Rufus E. Shapley,* for appellee.

PER CURIAM, July 19, 1899 :

We find no error in the learned trial judge's findings of fact or conclusions of law. It is unnecessary to add anything to what is contained in his opinion sent up with the record. On that opinion the judgment is affirmed.